**Shabnam TAPIA and Ramiro Tapia, Appellants–Plaintiffs,**

v.

**Shawn HEAVNER and Raymond J. Ohlson & Assoc., Appellees– Defendants.**

**No. 49A05–9403–CV–105.**

Court of Appeals of Indiana, Fifth District.

March 31, 1995.

---

Frederick R. Hovde, Townsend Hovde & Montross, Indianapolis, for appellants.

Robert B. Clemens, Scott A. Weathers, Bose McKinney & Evans, Indianapolis, for appellees.

## OPINION

RUCKER, Judge.

In this employment related personal injury action Plaintiffs–Appellants Shabnam Tapia and Ramiro Tapia ("the Tapias") appeal the grant of summary judgment in favor of Defendants–Appellees Shawn Heavner and Raymond J. Ohlson & Associates. The Tapias raise three issues for our review. However, because one issue is dispositive we rephrase and address it only: whether the Tapias' claims are barred by the provisions of the Worker's Compensation Act. For reasons explained below, we reverse the entry of summary judgment and remand this cause to the trial court with instructions to dismiss for lack of subject matter jurisdiction.

Raymond J. Ohlson & Associates (Ohlson & Associates) is a general insurance agency owned by Raymond J. Ohlson. Standard Life Insurance Company of Indiana (Standard Life) is primarily engaged in the business of selling annuity contracts and life insurance policies. Raymond J. Ohlson, through the company that bears his name, provides Standard Life Insurance Company with a variety of services including marketing advice.

At all times relevant to this appeal Shabnam Tapia was employed by Standard Life.

Although the record does not reveal her actual job title, Tapia handled new business, and processed applications for annuity and life insurance products. Tapia was paid by Standard Life and worked out of its offices located at 9100 Keystone Crossing in Indianapolis. Sometime in the Summer of 1991, Raymond Ohlson approached officials at Standard Life seeking assistance in a marketing campaign that his company was then undertaking. As a result of Ohlson's request Tapia was assigned to work part of her day at Ohlson & Associates and part of her day at Standard Life. She remained on the Standard Life payroll. According to Raymond Ohlson, Tapia's responsibilities were to include engaging in more direct contact with various agents around the country who were selling Standard Life products. According to Tapia, she spent the majority of her time entering data into a computer and answering the telephones. In any event, after her second or third day on the job, Tapia was injured when Shawn Heavner, an employee of Ohlson & Associates, pulled the lever on a chair in which Tapia was seated causing the chair to drop to the floor.

Shabnam Tapia filed a claim against Standard Life for worker's compensation which was paid by the company's insurance carrier. Tapia also filed a complaint for negligence against Ohlson & Associates and its employee Shawn Heavner (referred to collectively as "Ohlson"). Ramiro Tapia, Shabnam Tapia's husband, was joined as a plaintiff asserting a claim for loss of consortium. In response to the Tapias' complaint Ohlson filed an answer which included an affirmative defense challenging the trial court's subject matter jurisdiction. Thereafter, Ohlson moved for summary judgment contending that the Tapias' claims fell within the provisions of the Indiana Worker's Compensation Act (the Act), Ind.Code § 22-3-2-6. The motion was granted and this appeal ensued. Additional facts are discussed below where relevant.

■■■ The defense that a claim is barred by the exclusivity provision of the Act is an attack upon the court's subject matter jurisdiction which cannot form the basis of a motion for summary judgment. *Perry v. Stitzer Buick GMC, Inc.* (1994), Ind., 637 N.E.2d 1282, *reh'g denied.* Rather, such a challenge should be raised either in the pleadings as an affirmative defense or by a motion to dismiss under Ind.Trial Rule 12(B)(1). This is so because summary judgment terminates litigation predicated upon a finding that there are no material issues of fact that necessitate trial. *Id.* By contrast a motion to dismiss for lack of subject matter jurisdiction presents a threshold question concerning the court's power to act. *Id.* When a court lacks subject matter jurisdiction, any action it takes is void. Thus, as a decision on the merits, summary judgment may not be rendered by a court which itself lacks subject matter jurisdiction. *Id.*

■■■ In the case before us Ohlson first raised the issue of the trial court's jurisdiction in its answer. This was entirely appropriate. However, it then pursued the issue by way of a motion for summary judgment. In so doing Ohlson presented T.R. 56(C) materials including an affidavit and portions of depositions. The Tapias responded in kind. Were we to resolve this matter under our standard of review for summary judgment motions, we would be compelled simply to reverse. This is so because certain material facts in this case are in dispute and there are conflicting inferences from those facts on which the parties agree. The law is well settled that summary judgment should be granted only if the Rule 56 materials show that there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593, *trans. denied.* However, because the question of jurisdiction was squarely before the trial court, we analyze this case in that light. *See e.g., Burke v. Wilfong* (1994), Ind.App., 638 N.E.2d 865; *Northcutt v. Smith* (1994), Ind.App., 642 N.E.2d 254. Unlike ruling on a motion for summary judgment, the trial court may weigh evidence and resolve factual disputes when ruling on a motion to dismiss for lack of subject matter jurisdiction. *Perry,* 637 N.E.2d at 1286. In so doing the trial court may consider not only the complaint and motion but also any affidavits or other evidence. *Id.* at 1287. Although the opponent of jurisdiction typically carries the bur-

den of proof, when an employer makes such a challenge, the burden shifts to the employee to establish that the cause is properly before the court. *Id.* We will affirm the trial court's judgment on any theory supported by the evidence of record.

Indiana's Worker's Compensation Act provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. I.C. § 22–3–2–6; *Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, *reh'g denied.* The phrase "in the course of employment" refers to the time, place and circumstances surrounding the accident. *Blaw–Knox Foundry and Mill Machinery, Inc. v. Dacus* (1987), Ind.App., 505 N.E.2d 101, 102, *trans. denied.* An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Thiellen v. Graves* (1988), Ind.App., 530 N.E.2d 765, 767. Whether an injury arises out of and in the course of employment depends upon the facts and circumstances of each case. *Sanchez v. Hamara* (1989), Ind.App., 534 N.E.2d 756, *trans. denied.*

Tapia contends her injuries did not arise out of and in the course of employment because she was not in the employ of Ohlson & Associates at the time she was injured. Rather, according to Tapia, she was in the sole employ of Standard Life. We disagree.

A person may be in the employ of more than one employer at any given time. *Fox v. Contract Beverage Packers, Inc.* (1980), Ind.App., 398 N.E.2d 709. The determination of the existence of an employee-employer relationship is a complex matter involving a number of facts. For example, the *Fox* court enumerated the following factors: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. *Id.* at 711–12. Although no individual factor is decisive, our supreme court has determined that "[t]he primary consideration is that

there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist." *Hale v. Kemp* (1991), Ind., 579 N.E.2d 63, 67 citing *Rensing v. Indiana State Univ. Bd. of Trustees* (1983), Ind., 444 N.E.2d 1170, 1173.

The Tapias acknowledge the foregoing authority but point to evidence of record demonstrating a dispute of material fact as to whether the enumerated factors exist in this case. The Tapias are correct; there are a number of disputed facts here. As indicated earlier, were we to examine the evidence under our standard of review for summary judgments, then we would be compelled simply to reverse and this matter would likely proceed to trial on the merits. However, because we treat Ohlson's motion as one to dismiss for lack of subject matter jurisdiction our role as well as that of the trial court is different. The trial court may weigh evidence and resolve factual disputes, and we will affirm the trial court's judgment on any theory supported by the evidence of record.

Regarding whether there was a mutual belief that an employer-employee relationship existed, Tapia contends that neither she nor Raymond Ohlson ever considered Ohlson & Associates as her employer. In support Tapia directs us to her affidavit asserting as much and to Raymond Ohlson's deposition wherein he declared that he never actually offered Tapia "the job." Rather, he was "test[ing] her out" for possible future employment. *Record* at 107. Tapia's argument is not persuasive. The record is clear that there was an implied contract between Tapia and Ohlson & Associates. It was understood by both parties that Tapia would be expected to work, at least for part of her work day, at the offices of Ohlson & Associates. Indeed, in her deposition Tapia admitted that she "sort of" felt as though she had "two separate employers." *Record* at 22 (Deposition of Shabnam Tapia). Further, both Tapia and Ohlson & Associates entered into the employment agreement willingly. Certainly Ohlson & Associates had the right to refuse Tapia as an employee, and Tapia does not contend that she had no right to refuse to work at the Ohlson & Associates office. We found the existence of an implied contract

under similar circumstances in *Fox*, 398 N.E.2d 709.

In addition, the record also shows that a majority of the other factors are present indicating an employer-employee relationship between Ohlson & Associates and Tapia. For example, Ohlson & Associates had control over Tapia while she was working at its offices in that Ohlson & Associates was responsible for providing instructions as to how the work was expected to be done, as well as providing the necessary tools and equipment. *See Record* at 120, 123–126 (Deposition of Raymond Ohlson). Ohlson & Associates also determined the length of time Tapia would be required to work at its offices on a day to day basis. *Record* at 26, (Affidavit of Raymond Ohlson). The record is unclear whether Ohlson & Associates had the right to discharge Tapia. Raymond Ohlson's affidavit on this point is ambiguous: "I had the right to discontinue Ms. Tapia's working relationship at Raymond J. Ohlson & Associates if I had determined her work was unsatisfactory." *Record* at 27. In her brief, Tapia makes the assertion that Ohlson & Associates had no right of discharge and points to the deposition testimony of Edward Stahl, a Standard Life executive, in support of that assertion. However, our examination of the Stahl deposition reveals no such support. In any event the trial court as the fact finder could reasonably infer that Ohlson & Associates had the authority to discharge Tapia from its employ although it could not discharge her from the employ of Standard Life. Even assuming no such inference is permissible, five of the seven factors enumerated in *Fox* are nonetheless present in this case.[1] Those factors are sufficient to demonstrate that an employer-employee relationship existed between Ohlson & Associates and Tapia.

Because Shabnam Tapia's injuries occurred within the period of her employment with Ohlson & Associates, at a place where Tapia was expected to be, and while fulfilling the duties of her employment, her injuries arose "in the course of employment." *See Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, *trans. denied.*

Also, because there was a causal nexus between Tapia's injuries and the services she was performing on behalf of Ohlson & Associates, her injuries "arose out of" employment. *See Thiellen v. Graves* (1988), Ind. App., 530 N.E.2d 765, 767. The Act provides compensation to employees for injuries which arise out and in the course of employment. The rights and remedies under the Act are exclusive and exclude all other rights and remedies of such employees. Therefore, the trial court lacked subject matter jurisdiction to entertain Shabnam Tapia's complaint against Raymond J. Ohlson & Associates.

■ The mere fact that Tapia's injuries are covered by the Act does not automatically bar her from pursuing an action against a third party. *Burke v. Wilfong* (1994), Ind. App., 638 N.E.2d 865. According to I.C. § 22–3–2–13:

> Whenever an injury or death, for which compensation is payable under chapters 2 through 6 of this article shall have been sustained under circumstances creating in *some other person than the employer and not in the same employ* a legal liability to pay damages in respect thereto, the injured employee ... may commence legal proceedings against the other person to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment of or liability to pay compensation under chapters 2 through 6 of this article.

(emphasis added). The language "not in the same employ" preserves a co-employee's immunity from common law liability for accidents found to have arisen out of and in the course of employment. *Tarr v. Jablonski* (1991), Ind.App., 569 N.E.2d 378 *trans. denied.* A number of recent decisions have carved out an exception holding that where a co-employee engages in horseplay or various non-job related activities, he forfeits the immunity provided by statute. *See e.g., Fields v. Cummins Employees Fed. Credit Union* (1989), Ind.App., 540 N.E.2d 631; *Seiler v. Grow* (1987), Ind.App., 507 N.E.2d 628 *trans. denied; Martin v. Powell* (1985), Ind.App., 477 N.E.2d 943, *trans. dismissed.* Such ac-

---

1. Both parties agree and the record shows that Tapia remained on the payroll of Standard Life and at no time was paid by Ohlson & Associates.

tivities as pulling chairs from under fellow employees are not considered as "in the course of employment" and therefore are not "in the same employ" for purposes of the Act. *See Fields*, 540 N.E.2d at 637. Thus, were we to follow the foregoing line of authority then Shawn Heavner would be subject to Tapia's common law complaint because his horseplay resulted in Tapia's injuries.

 However, we agree with the reasoning in *Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, *reh'g denied* and "decline to follow those cases which expose a co-employee to liability based upon the non-job related nature of his actions." *Id.* at 403. Rather, the test to determine whether the parties were "in the same employ" is whether the denominated defendant could obtain compensation benefits under the same or similar circumstances. *Id.* citing *Ward v. Tillman* (1979), 179 Ind.App. 626, 386 N.E.2d 1003. The facts of this case show that Shabnam Tapia and Shawn Heavner were in the same employ. They both worked in the same office and were identically situated. If the situation had been reversed, then Heavner would have been able to obtain compensation benefits to the same extent as Tapia. Accordingly, worker's compensation is Tapia's exclusive remedy and the trial court lacked subject matter jurisdiction to entertain Tapia's complaint against Shawn Heavner.

 Finally, the exclusivity section of the Act bars a cause of action for loss of consortium advanced by the spouse of an employee injured at work. *Greene v. Westinghouse Elec. Corp.* (1991), Ind.App., 573 N.E.2d 452, *trans. denied.* Therefore Ramiro Tapias' claim for loss of consortium must fail.

For the reasons set forth herein, we reverse the trial court's entry of summary judgment and remand this cause to the trial court with instructions to dismiss for lack of subject matter jurisdiction.

Reversed and remanded.

SHARPNACK, C.J. and CHEZEM, J., concur.