**ACCORD HUMAN RESOURCES, INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado, and Colorado Division of Unemployment and Training, Respondents.**

No. 09CA1356.

Colorado Court of Appeals, Div. V.

May 27, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

The Nugent Law Firm, P.C., Brian M. Nugent, Fort Collins, Colorado; Rothgerber Johnson & Lyons LLP, Jaclyn K. Casey, Denver, Colorado, for Petitioner.

No Appearance for Respondent Industrial Claim Appeals Office.

John W. Suthers, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Colorado Division of Unemployment and Training.

Opinion by Judge LICHTENSTEIN.

Petitioner, Accord Human Resources, Inc. (Accord), seeks review of a final order of the Industrial Claim Appeals Office (Panel). In that order, the Panel reversed a hearing officer's decision holding that the Division of Employment and Training (Division) lacked authority to treat five related Accord entities as a "single employing unit," combine their unemployment tax accounts into a single account, and retroactively collect allegedly delinquent taxes for the years 2002 through 2007.

Because we conclude that the hearing officer correctly determined the Division lacked authority to treat the separate Accord entities as a single employing unit or a single employer, we set aside the Panel's decision and remand with instructions to reinstate the decision of the hearing officer.

## I. Background

Accord is a professional employer organization based in Oklahoma and operating in many states, including Colorado. Over time, Accord formed other organizations including Accord Human Resources of California, Inc., Accord Human Resources of California II, Inc., Accord Human Resources of New York, and Accord Human Resources of Colorado, Inc., all of which are licensed to do business in Colorado.

The Division assigned each Accord entity a separate unemployment insurance tax account number. However, following a 2004 transfer of a large number of employees from Accord to Accord Human Resources of Colorado, Inc., the Division conducted an investigation of the tax accounts for those entities. That investigation culminated in a 2007 tax "liability determination" in which the Di-

vision combined the five separate Accord entity unemployment tax accounts into a single account with a blended experience rating and retroactively imposed "delinquent" taxes and interest totaling $543,988.29 for the years 2002 through 2007.

Accord appealed the tax liability determination and the matter proceeded to a hearing. Although the Division's tax liability determination referenced two statutory provisions that allegedly supported the determination, at the hearing the Division stipulated that one of these provisions, currently codified as section 8–76–104, C.R.S.2009,[1] was not applicable, and that the sole statutory grounds for combining the separate Accord tax accounts and imposing delinquent taxes was section 8–70–114(1), C.R.S. 2009.

The Division argued that section 8–70–114(1) authorized it to treat the separate Accord entities as a "single employing unit" based on issues of common ownership and control, to combine their respective tax accounts into a single account, and to retroactively assess taxes based on the newly created single account. However, the hearing officer concluded that nothing in the language of section 8–70–114(1) gave the Division this authority. The hearing officer further determined that, because each Accord entity met the statutory definition of an "employer," the Division was required by statute to maintain a separate tax account for each entity. *See* § 8–76–103(1)(a), C.R.S.2009. Consequently, the hearing officer reversed the Division's tax liability determination.

The Division appealed the hearing officer's decision to the Panel. Focusing on a statement in the hearing officer's decision that "the Accord entities should be considered a single employing unit for the purposes of determining an individual's entitlement to unemployment insurance benefits," the Panel concluded that section 8–70–114(1) also au-

thorized the Division to treat the Accord entities as a single employing unit for purposes of tax liability. Accordingly, the Panel reversed the hearing officer's decision and reinstated the Division's tax liability determination.

## II. Analysis

Accord contends the Panel erred in concluding that section 8–70–114(1) authorized the Division to treat the separate Accord entities as a single employing unit or to otherwise consolidate their separate tax accounts. We agree.

### A. Standard of Review

■ We may set aside the Panel's decision if the decision is erroneous as a matter of law. *See* § 8–74–107(6)(d), C.R.S.2009. We review an agency's conclusions of law de novo. *See Davison v. Indus. Claim Appeals Office,* 84 P.3d 1023, 1029 (Colo.2004); *see also Bell v. Indus. Claim Appeals Office,* 93 P.3d 584, 586 (Colo.App.2004) (appellate court reviews de novo the Panel's ultimate legal conclusions). Our de novo review extends to an agency's interpretation of statutes. *See Benuishis v. Indus. Claim Appeals Office,* 195 P.3d 1142, 1145 (Colo.App. 2008).

### B. Issue Preservation

■ As a threshold matter, we reject the Division's assertion that Accord is precluded from challenging the Division's treatment of the separate Accord entities as a "single employing unit" or from arguing that only "employers" are subject to taxation under the statutory scheme and that each employer is entitled to its own tax account number.

These issues were raised and argued extensively before the hearing officer and were an integral part of the hearing officer's decision. The record also reflects that Accord

---

1. The General Assembly amended section 8–76–104 in 2005 to conform with amendments to the federal statutory scheme designed to address an employer practice called "SUTA Dumping." *See* Ch. 155, sec. 1, § 8–76–104, 2005 Colo. Sess. Laws 543. The Division concedes that the transfer of employees from Accord to Accord Human Resources of Colorado, Inc. occurred before the effective date of this 2005 amendment. Moreover, given the Division's stipulation at the hearing that its actions were based solely on section 8–70–114(1), and not on section 8–76–104, we do not address the possible applicability of either the pre- or post-amendment versions of section 8–76–104.

filed a responsive brief to the Division's brief before the Panel specifically addressing the former issue.

■ The Division also asserts that Accord "waived any objection" to the hearing officer's determination that the Accord entities should be considered a single employing unit for benefits purposes by failing to appeal that determination to the Panel. However, because Accord prevailed before the hearing officer, it was not required to appeal any particular determination by the hearing officer, much less one that did not impact the overall decision. Indeed, Accord was not even required to file a responsive brief before the Panel. *See* Dep't of Labor & Employment Reg. 11.2.15.12, 7 Code Colo. Regs. 1101–2 (providing that the Panel "may, in its discretion, permit the non-appealing party to file a brief in response to the brief filed by the appealing party"). In any event, Accord specifically argued in its brief to the Panel that each of the Accord entities was a separate employing unit and that section 8–70–114 "did not justify the Division's consolidation of the[se] separate employing units."

Under these circumstances, we conclude these issues have been preserved for our review in this appeal.

### C. The Division's Alleged Authority Under Section 8–70–114(1)

The parties do not dispute that each of the Accord entities met the statutory definitions of both an "employing unit," *see* § 8–70–114(1), and an "employer." *See* § 8–70–113(1)(a)(II), C.R.S.2009. The Division, nevertheless, argues that based on issues of common control or common ownership among the Accord entities, the following sentence in section 8–70–114(1) gave it authority to treat the separate Accord entities as a single employing unit and assign them a single tax account:

> All individuals performing services within this state for any employing unit that maintains two or more separate establishments within this state shall be deemed to be employed by a single employing unit for all the purposes of articles 70 to 82 of this title.

We interpret a statute to give effect to the intent of the General Assembly, and to effectuate legislative intent, we first look to the plain and ordinary meaning of the words the General Assembly has chosen to utilize. *See Ortega v. Indus. Claim Appeals Office*, 207 P.3d 895, 898 (Colo.App.2009); *see also Dubois v. Abrahamson*, 214 P.3d 586, 587 (Colo. App.2009).

■ Here, we perceive nothing in this language of section 8–70–114(1) that gives the Division authority to treat separate statutory employing units as a single employing unit based on elements of common ownership or control.

Rather, this provision presumes the existence of a single employing unit and merely provides that if the single employing unit maintains two or more "establishments" within Colorado, individuals performing services within the state for those establishments are deemed to be employed by the single employing unit for all purposes. *See Dewhurst v. Indus. Claim Appeals Office*, 148 P.3d 378, 380 (Colo.App.2006) (noting that section 8–70–114(1) "merely defines an employing unit for purposes of determining benefits for those working in Colorado and describes one situation in which such a worker will be deemed to have been employed by a single employing unit").

Insofar as the Division urges an interpretation of this provision that equates multiple "establishments" with multiple "employing units," we reject such an interpretation. By using both of these terms in the sentence, the General Assembly understood the difference between them and intended that they have different meanings. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo.2008) (use of different terms signals an intent on the part of the General Assembly to afford those terms different meanings); *see also Winakor v. Annunzio*, 409 Ill. 236, 99 N.E.2d 191, 194 (1951) (analyzing substantially similar sentence contained in Illinois unemployment statute and rejecting assertion that separate "establishments" of a particular business may be regarded as individual "employing units").

Thus, contrary to the Division's argument and the Panel's order, we conclude that section 8–70–114(1) did not give the Division authority to treat the various separate Accord entities as a single employing unit based on elements of common ownership and control. Furthermore, because each of the individual Accord entities met the definition of an "employer" under section 8–70–113(1)(a)(II), the Division was required under section 8–76–103(1)(a) to maintain a separate tax account for each entity.

### D. The Division's Alleged Authority Under Case Law

As further support for its authority to treat the Accord entities as a single employing unit, the Division relies on several decisions from this court, primarily *Giacopelli v. Industrial Commission,* 622 P.2d 111, 112 (Colo.App.1980), and *Colorado State, Auraria Higher Education Center v. Korin,* 876 P.2d 103, 106 (Colo.App.1994). We are not persuaded that these decisions support the Division's position.

First, neither *Giacopelli* nor *Korin* addressed whether the Division had authority to combine or consolidate multiple related entities for purposes of imposing unemployment taxes. Rather, both of those cases addressed claims for unemployment benefits by individuals. Moreover, although *Giacopelli* and *Korin* discussed the possibility of treating multiple entities as a "single employing unit" for benefit claim purposes based on common ownership or control, in addressing that issue both cases relied on *Teets v. Leach,* 112 Colo. 304, 148 P.2d 365 (1944). However, *Leach* was decided under the prior version of the unemployment compensation statute in which an "employer" was defined to include the following:

Any employing unit which together with one or more other employing units, is owned or controlled (by legally enforcible [sic] means or otherwise) directly or indirectly by the same interests, or which owns or controls one or more other employing units (by legally enforcible [sic] means or otherwise), and which, if treated as a single unit with such other employing units or interests, or both, would be an employer under paragraph (1) of this subsection.

Ch. 2, § 19(f)(4), 1936 Colo. Sess. Laws 52 (3d extr. sess.); *see Leach,* 112 Colo. at 306, 148 P.2d at 365. At that time, the unemployment compensation statute generally defined an "employer" as an employing unit that employed eight or more individuals. *See* Ch. 2, § 19(f)(1), 1936 Colo. Sess. Laws 51 (3d extr. sess.); *Leach,* 112 Colo. at 306, 148 P.2d at 365. The purpose of this type of provision, commonly labeled an "affiliate" or "common control" clause, was to prevent a business from circumventing the unemployment statutes by dividing into smaller units each of which employed fewer people than the statutory minimum. *See State v. Dallas Liquor Warehouse No. 4,* 147 Tex. 495, 217 S.W.2d 654, 655 (1949); *see also* Annotation, *Validity, Construction, and Application of Provisions of Social Security or Unemployment Compensation Acts as to Employment Units Which are Affiliated or Under a Common Control,* 158 A.L.R. 1237 (1945). However, the General Assembly removed this "common control" provision from Colorado's unemployment statute in 1941. *See* Ch. 224, § 19(f), 1941 Colo. Sess. Laws 802–03.

Thus, the discussion in *Leach* regarding the Division's authority to treat multiple employing units as a single employer based on common control or common ownership was premised solely on a statutory provision that, since 1941, has not been part of Colorado's statutory scheme. Because *Giacopelli* and *Korin* both rely on *Leach,* which in turn relied on statutory language that no longer exists, we are not persuaded those cases support the Division's position.

Finally, the Division's reliance on *Bigby v. Big 3 Supply Co.,* 937 P.2d 794, 798 (Colo. App.1996), is also misplaced. Although *Bigby* addressed the "joint employer doctrine" or "single employer theory," the terms were analyzed solely in the context of an employer's potential coverage under federal and state antidiscrimination statutes. Nothing in *Bigby,* or the cases cited therein, involved unemployment law or unemployment statutes.

### III. Conclusion

Because section 8–70–114(1) did not give the Division authority to treat the various Accord entities as a single employing unit or employer, or to collapse their separate tax accounts into a single account and collect additional taxes on a retroactive basis, we conclude that the Panel's order upholding the Division's tax liability determination was erroneous and must be set aside. *See* § 8–74–107(6)(d).

Given our resolution of this issue, we need not address Accord's additional arguments that the Division's liability determination violated due process, and that the Division's retroactive assessment of taxes was not authorized under section 8–76–105(2), C.R.S. 2009.

The Panel's order is set aside and the case is remanded with instructions to reinstate the decision of the hearing officer.

Judge GRAHAM and Judge RUSSEL concur.